KELLY, Judge:
In this appeal we must determine whether persons who have been charged with violating 35 P.S. § 780-113(a)(14), (30), or (37) and who plead guilty or nolo contendere to any of these subsections are barred under 35 P.S. § 780-117(l)(vi) from being sentenced to probation without verdict. Our review requires us to interpret 35 P.S. § 780-117(1). After careful consideration, we hold that 35 P.S. § 780-117(l)(vi) does prohibit a person who has pled guilty or nolo contendere to a charge of violating 35 P.S. § 780-113(a)(14), (30), or (37) from being sentenced to probation without verdict. Therefore, we vacate the appellee’s, Raymond Berrymen’s, sentence of probation without verdict and remand for resentencing.
Appellee, Raymond Berryman, sold two vials of crack cocaine to an undercover police officer on August 29, 1992. Appellee was arrested by backup officers. Appellee was charged with violating subsection (a)(30) of 35 P.S. § 780-113. Appellee pled nolo contendere to the charge. This was appellee’s first arrest. Appellee has been certified as drug dependent. At sentencing, appellee received probation without verdict.
The Commonwealth filed a timely petition to modify the sentence which was denied. Timely notice of appeal was filed.
On appeal, the Commonwealth raises in an unsophisticated legal and editorial manner the following issue:
CAN DEFENDANTS, WHO WERE CHARGED WITH DRUG DEALING AND WHO CONCEDED THEIR GUILT BY PLEADING NO CONTEST, REWRITE SECTION 17(1)(VI) AND RECEIVE PROBATION WITHOUT VERDICT, EVEN THOUGH THAT SECTION EXPRESSLY PROHIBITS SUCH LENIENT TREATMENT FOR ANY DEFENDANT “WHO WAS CHARGED” WITH DRUG DEALING, AND EVEN THOUGH THE IMPROPER CONSTRUCTION OF THE SECTION *264 ADOPTED BELOW VIOLATES BASIC RULES OF STATUTORY CONSTRUCTION AND RESULTS IN AN ABSURD INTERPRETATION THAT PERMITS THE INNOCENT TO BE PENALIZED AND THE GUILTY REWARDED?
Commonwealth’s Brief at 4.
In essence, the Commonwealth argues that appellee received an illegal sentence as 35 P.S. § 780-117(l)(vi) (“Section 17(l)(vi)”) bars him from receiving probation without verdict. Appellee, however, contends that section 17(l)(vi) does not bar a sentence of probation without verdict because he has not been charged with violating 35 P.S. § 780-113(14), (30), or (37) in a previous, unrelated charge. Therefore, appellee concludes, the sentence imposed was not illegal and was within the discretion of the trial court.
Section 17(1) states in full:
§ 780-117. Probation without verdict
Except as provided in clause (1) of this subsection, the court may place a person on probation without verdict if the person pleads nolo contendere or guilty to any nonviolent offense under this act and the person proves he is drug dependent. For the purposes of proving drug dependency, the person must present the testimony of a physician trained in the field of drug abuse. The term of probation shall be for a specific time period not to exceed the maximum for the offense upon such reasonable term and conditions as the court may required. The following shall apply: (1) The following persons shall be ineligible for probation without verdict:
(i) Any person who has previously been convicted of an offense under this act or similar act of the United States or any other state.
(ii) Any person who has been convicted of a misdemeanor or felony in this Commonwealth or an equivalent crime under the laws of any other state.
(iii) Any person who has been placed on Accelerated Rehabilitative Disposition where the person was charged *265 with a violation of this act or the commission of a misdemeanor or felony in this Commonwealth.
(iv) Any person who is charged with or has pleaded guilty or nolo contendere to multiple offenses which are based on separate conduct or arise from separate criminal episodes such that those offenses could be tried separately in accordance with 18 Pa.C.S.A. § 110 (relating to when prosecution barred by former prosecution for different offense).
(v) Any person who is a dangerous juvenile offender under 42 Pa.C.S. § 6302 (relating to definitions) or who was adjudicated delinquent for conduct which would constitute a violation of clause (30) or (37) of subsection (a) of section 13 of this act.
(vi) Any person who was charged with violating clause (14), (30) or (37) of subsection (a) of section 13 of this act.[1]
35 P.S. § 780-117(1) (footnote omitted) (emphasis added).
The present controversy centers on the words “was charged” in subsection (vi) of section 17(1). The Common *266 wealth posits that “was charged” should be interpreted to mean “charged in the proceeding in which the trial court wishes to impose a sentence of probation without verdict.” Appellee contends that “was charged” refers to “previous, unrelated charges” and only a second charge of violating 35 P.S. § 780-113(a)(14), (30), or (37) would render a defendant ineligible to receive probation without verdict.
This opinion is the first to consider the interpretation of section 17(l)(vi) since the statute was adopted in 1992.[2] Superficially, subsection (vi) of section 17(1) appears susceptible to two different meanings, thus, requiring us to interpret section 17(1)(vi).
In a case involving a question of statutory interpretation, we are subject to the rules of statutory construction enacted by the legislature and embodied in 1 Pa.C.S.A. § 1901 et seq. Commonwealth v. Dickerson, 533 Pa. 294, 621 A.2d 990 (1993); Commonwealth v. Grayson, 379 Pa.Super. 55, 549 A.2d 593 (1988); 1 Pa.C.S.A. § 1901. In ascertaining the meaning of a statute, it is our obligation to determine the intent of the legislature and give effect to that intention. Commonwealth v. Runion, 427 Pa.Super. 217, 628 A.2d 904 (1993); Commonwealth v. Lundberg, 422 Pa.Super. 495, 619 A.2d 1066 (1993); Commonwealth v. Grayson, supra; 1 Pa. C.S.A. § 1921(a).
We are to give the words of a statute their plain and ordinary meaning. Commonwealth v. Neckerauer, 421 Pa.Super. 255, 617 A.2d 1281 (1992); Commonwealth v. Johnson, 417 Pa.Super. 636, 612 A.2d 1382 (1992); Commonwealth v. Grayson, supra. The words are to be considered in their grammatical context. 1 Pa.C.S.A. § 1930. The scope of “grammatical context” includes the tenses of verbs used in a *267 statute. See Commonwealth v. Kimmel, 523 Pa. 107, 565 A.2d 426 (1989) (use of the word “violating” means a present violation).
[S]ections of statutes are not to be isolated from the context in which they arise such that an individual interpretation is accorded one section which does not take into account the related sections of the same statute. Statutes do not exist sentence by sentence. Their sections and sentences comprise a composite of their stated purpose.
Commonwealth v. Lurie, 524 Pa. 56, 60, 569 A.2d 329, 331 (1990) (quoting Commonwealth v. Revtai, 516 Pa. 53, 63, 532 A.2d 1, 5 (1987)). An interpretation of the language in a section of a statute must remain consistent throughout the statute. See id.
Additionally, where a section of a statute contains a given word, the omission of such word from a similar section of the statute shows a different legislative intent. Commonwealth v. Taylor, 424 Pa.Super. 181, 622 A.2d 329 (1993). See Novicki v. O’Mara, 280 Pa. 411, 416, 124 A. 672, 673 (1924); Hodges v. Rodriguez, 435 Pa.Super. 360, 370, 645 A.2d 1340, 1345 (1994) (“a change of language in provisions is prima facie evidence of a change of intent”). Where a legislature includes specific language in one section of a statute and excludes it from another, that language should not be implied where excluded. Bureau of Liquor Control Enforcement v. Prekop, 156 Pa.Cmwlth. 250, 627 A.2d 223 (1993). Furthermore, we may not add provisions which the legislature has omitted unless the phrase is necessary to the construction of the statute. Commonwealth v. Reeb, 406 Pa.Super. 28, 593 A.2d 853 (1991); Commonwealth v. Scott, 376 Pa.Super. 416, 546 A.2d 96 (1988), allocatur denied, 522 Pa. 612, 563 A.2d 497 (1989). See Commonwealth v. Rieck Investment Corporation, 419 Pa. 52, 213 A.2d 277 (1965) (it is not for courts to add to a statute, by interpretation, a requirement which the legislature did not see fit to include); Kusza v. Maximonis, 363 Pa. 479, 70 A.2d 329 (1950) (court cannot supply omissions in a statute by its powers of construction where it appears the omission was intentional). If a phrase is necessary, it may be added *268 but only if the addition does not affect the scope of the statute. Id. See also Commonwealth v. Fisher, 485 Pa. 8, 400 A.2d 1284 (1979). See Garcia v. Community Legal Serv. Corp., 362 Pa.Super. 484, 524 A.2d 980 (1987), allocatur denied, 517 Pa. 623, 538 A.2d 876 (1988) (adding the word “physical” to the term “injury” improperly limited the scope of the statute). The addition may not conflict with the obvious purpose and intent of the statute. Commonwealth v. Scott, supra.
Further, a statute should be interpreted as a whole, Commonwealth v. Lurie, supra; Commonwealth v. Biddle, 411 Pa.Super. 210, 601 A.2d 313 (1991); giving effect to all of its provisions if possible. Commonwealth v. Brown, 423 Pa.Super. 264, 620 A.2d 1213 (1993); Commonwealth v. Grayson, supra. Every word, sentence or provision of a statute is intended for some purpose and accordingly must be given effect. Commonwealth v. Lobiondo, 501 Pa. 599, 462 A.2d 662 (1983). See Commonwealth v. Pierce, 397 Pa.Super. 126, 579 A.2d 963 (1990), allocatur denied, 527 Pa. 609, 590 A.2d 296 (1991) (legislature must be presumed to have intended every word of the statute to have effect); Commonwealth v. Scott, supra (we must construe a statute so as to give effect to every word).
Also, a court is permitted to consider the practical consequences of a particular interpretation. Commonwealth v. Runion, supra; Commonwealth v. Lundberg, supra. We are to presume that the legislature did not intend a result that is absurd or unreasonable. Commonwealth v. Lundberg, supra; Commonwealth v. Fouse, 417 Pa.Super. 534, 612 A.2d 1067 (1992), allocatur denied, 535 Pa. 614, 629 A.2d 1376 (1993). Statutes should receive the most sensible construction possible. Commonwealth v. Coleman, 289 Pa.Super. 221, 433 A.2d 36 (1981).
The intent of the legislature may be determined by considering, among other things,
(1) The occasion and necessity for the statute.
(2) The circumstances under which it was enacted.
(3) The mischief to be remedied.
*269 (4) The object to be attained.
(5) The former law, if any, including other statutes upon the same or similar subjects.
(6) The consequences of a particular interpretation.
(7) The contemporaneous legislative history.
(8) Legislative and administrative interpretations of such statute.
1 Pa.C.S.A. § 1921(c). See also Commonwealth v. Brown, supra; Commonwealth v. Davis, 421 Pa.Super. 454, 618 A.2d 426 (1992); allocatur denied, 535 Pa. 630, 631 A.2d 1004 (1993); Commonwealth v. Barone, 276 Pa.Super. 282, 419 A.2d 457 (1980) (en banc).
Official comments may be consulted in the construction of the original provisions of the statute if the comment was published or generally available prior to the consideration of the statute by the legislature. Commonwealth v. French, 531 Pa. 42, 611 A.2d 175 (1992). See also Commonwealth v. Neckerauer, supra. Statements made by legislators during the enactment process, while not dispositive of legislative intent, may be considered as part of the contemporaneous legislative history. Commonwealth v. Wilson, 529 Pa. 268, 602 A.2d 1290 (1992), cert. denied in Aultman v. Pennsylvania, - U.S. -, 112 S.Ct. 2952, 119 L.Ed.2d 574 (1992).
Finally, a penal statute is a statute which defines criminal offenses and specifies corresponding fines and punishments. Black’s Law Dictionary (5th ed. 1981). Penal statutes must be strictly construed. Commonwealth v. Hill, 481 Pa. 37, 391 A.2d 1303 (1978); Commonwealth v. Wood, 432 Pa.Super. 183, 208, 637 A.2d 1335, 1348 (1994). However, strict construction does not require that the intent of legislature be disregarded. Commonwealth v. Runion, supra. Further, language which is capable of more than one meaning can be clear and unmistakable in the context of its usage by the selection of the meaning which is neither forced nor strained. Commonwealth v. Grayson, supra. It is only when a statute has two reasonable constructions, the construction which operates in favor of the defendant’s liberty must be applied, not *270 the construction supported by the greatest reason. Commonwealth v. Eyster, 401 Pa.Super. 477, 585 A.2d 1027 (1991), allocatur denied by Commonwealth v. Larsen, 529 Pa. 646, 602 A.2d 857 (1992); Commonwealth v. Smith, 333 Pa.Super. 155, 481 A.2d 1352 (1984).
Instantly, section 17 is a penal statute. Therefore, we must now determine whether, according to the rules of statutory construction, two reasonable constructions for section 17(l)(vi) exist, or whether only one interpretation is a reasonable interpretation.
We first look at the plain meaning of the words of the statute and consider them in their grammatical context. Black’s Law Dictionary defines “charged” as “an accusation of crime by complaint, indictment or information.” Black’s Law Dictionary (5th ed. 1981). When a person is charged with a crime, that person’s guilt or innocence as to the accusation has yet to be determined. Once the criminal charge against that person has been disposed of in a judicial proceeding, that person is no longer accused or charged with a crime; rather, that person, in the past, was charged and convicted of a crime or was charged and acquitted of a crime or was charged and the criminal charges were dismissed. In other words, prior to a disposition of the criminal charges, the criminal charges are pending and the person is charged; after a disposition of the criminal charges, the criminal charges are no longer pending and the person was charged with a criminal offense in the past. See e.g. Commonwealth v. Canfield, 432 Pa.Super. 496, 499, 639 A.2d 46, 48 (1994) (“Appellant was charged with [eight offenses] ... appellant pled nolo contendré to [one offense].”); Commonwealth v. Toro, 432 Pa.Super. 383, 391-92, 638 A.2d 991, 995 (1994) (“Appellant and Mr. Cartagena were thereafter charged [with several drug offenses] ... and Appellant was convicted of those offenses.”). At the time a defendant is being sentenced, the defendant was charged with and convicted of the offense for which he is being sentenced. Therefore, according to the common and approved usuage of “was charged,” after a defendant pleads guilty or nolo contendré to a charge of violating 35 P.S. § 780-113(a)(14), (30), or *271 (37) he was charged with violating 35 P.S. § 780-113(a)(14), (30), or (37). Consequently, the defendant would be ineligible to receive probation without verdict pursuant to section 17(1)(vi).
The Commonwealth’s interpretation of section 17(1) conforms with the common and approved usage of the term “was charged.” The Commonwealth argues that the charges are no longer pending because appellee pled nolo contendere to violating 35 P.S. § 780-113(a)(30) and sought to have a sentence, probation without verdict, imposed. The Commonwealth posits that the charge was resolved through the plea. Thus, the Commonwealth concludes,- appellee was charged with violating 35 P.S. § 780-113(a)(30). Therefore, appellee is ineligible to receive probation without verdict.
Appellee, however, argues that because he received probation without verdict, the charges are still pending. He posits that because he will not have a conviction on his record and the charges will be dismissed if he successfully completes his probation without verdict, the charges have not been resolved and therefore, the charges are still pending. Appellee’s argument begs the question.
Appellee’s argument fails to consider that probation without verdict cannot be imposed until the charges have been resolved. Not until a plea of guilt or nolo contendere has been entered can appellee receive a sentence of probation without verdict. Once appellee has pled nolo contendere, the charges are no longer pending. Hence, appellee is no longer “being charged.”
Also, appellee does not consider the consequences of violating his probation without verdict. If appellee violates his probation without verdict, judgment may be entered based upon his nolo contendere plea and the case would proceed as a typical criminal case. See 35 P.S. § 780-117. Appellee is not permitted to enter a new plea or go to trial if he violates his probation without verdict. See id. Judgment could not be entered unless there was a resolution of the charges. Thus, once appellee entered a plea of nolo contendere, the charges *272 were resolved and no longer pending. Therefore, appellee’s contention that his charges are still pending such that section 17(l)(vi) does not prohibit him from receiving probation without verdict contravenes the common and approved usage of the phrase “was charged.”
We next consider the effect that both of the proposed interpretations of the term “was charged” has on subsection (iii) of section 17(1). Section 17(l)(iii) also contains the term “was charged,” which must be given the same meaning given to “was charged” in section 17(1)(vi). See Commonwealth v. Lurie, supra. Section 17(1)(iii), in its entirety, states:
(iii) Any person who has been placed on Accelerated Rehabilitative Disposition where the person was charged with a violation of this act or the commission of a misdemeanor or felony in this Commonwealth.
35 P.S. § 780 — 117(1)(iii) (emphasis added).
The legislative intent of section 17(1)(iii) is clear on its face. Persons who have been placed on Accelerated Rehabilitative Disposition (“ARD”) for violating the Drug Act, 35 P.S. § 780-101 et seq. or for committing a misdemeanor or felony in this Commonwealth are prohibited from receiving probation without verdict.
The interpretation of “was charged” which the Commonwealth urges us to accept, that “was charged” means “was charged in the proceedings in which probation without verdict is being imposed,” does not change the clear intent of subsection (iii) of section 17(1). Section 17(l)(iii), according to the Commonwealth’s interpretation, would prohibit persons from receiving probation without verdict who previously have been placed on ARD where the person was charged with violating the Drug Act or was charged with committing a misdemeanor or felony in this Commonwealth.
Appellee’s interpretation, however, that “was charged” means “was charged in a separate, prior proceeding than the one in which probation without verdict is being imposed” does not conform with the plain meaning of section 17(l)(iii). Subsection (iii) of section 17(1), according to appellee’s interpreta *273 tion, would prohibit persons from receiving probation without verdict who previously have been placed on ARD where the person was charged with violating the Drug Act or committing a felony or misdemeanor in a separate, prior proceeding than the one in which ARD was imposed.
As stated above, the legislative intent of section 17(1)(iii) is that any person who has been placed on ARD for violation of the Drug Act or the commission of a misdemeanor or felony is barred from receiving a sentence of probation without verdict. Appellee’s interpretation of the term “was charged” when applied consistently throughout the statute, contradicts the clear intent of section 17(1)(iii) while the Commonwealth’s interpretation of “was charged” is consistent with the legislative intent of section 17(1)(iii).
Further, realizing that language included in one provision of the statute and omitted in other similar provisions of the same statute is significant to show different legislative intent, we examine section 17(1) as a whole. Also, the use of different language in similar provisions of the same statute signifies a different legislative intent.
Section 17(1)(i) uses the language “has previously been convicted” to show a prior, separate conviction. The word “previously” is not included in subsection (vi). The omission of the term “previously” in subsection (vi), when it was included in subsection (i), shows that the omission of the word “previously” was intentional. The legislature did not intend for the term “was charged” to mean “was previously charged.”
Additionally, subsection (iv) states that a party is ineligible to receive probation without verdict if the person “is charged with or has pled guilty or nolo contendere to multiple offenses which are based on separate conduct or criminal episodes.” 35 P.S. § 780-117(1)(iv) (emphasis added). The legislature included language in subsection (iv) which specifically identified separate criminal actions. The legislature did not include language which specifically identified separate criminal action in subsection (vi). Again, the omission of that language or similar language indicating separate, criminal incident in sub *274 section (vi), when it was included in subsection (iv), is significant. Language indicating separate criminal conduct was intentionally omitted from section 17(l)(vi). Thus, the legislature did not intend for section 17.(l)(vi) to refer to separate conduct.
The legislature has included specific language in two of the other subsections of section 17(1) which shows that the legislature is referring to a separate proceeding. The legislature has not included similar specific language in subsection (vi) to indicate that subsection (vi) of section 17(1) was intended to mean a prior, separate proceeding. Thus, due to the deliberate omissions, we must conclude that the legislature did not intend subsection (vi) to refer to prior, separate proceedings. If the legislature intended section 17(l)(vi) to refer to separate prior proceedings, it would have included specific language showing that intent as it included such language in subsections (i) and (iv).
Furthermore, it is undisputed that subsections (i), (ii), and (iii) of section 17(1) use the phrase “has been” to connote prior, separate occurrences. In subsection (vi), however, instead of using the phrase “has been,” the legislature uses “was.” The choice of the different verb tense shows a different legislative meaning. If the legislature had intended section 17(l)(vi) to mean previous, separate charges, the legislature would have used the same language it used in subsections (i), (ii) and (iii) of section 17(1) to refer to previous, separate proceedings. The legislature’s use of the term “was charged” instead of “has been charged” shows that the legislature did not intend to refer to separate, previous charges, but rather the legislature intended to refer to the proceeding in which the defendant seeks a sentence of probation without verdict.
Appellee concedes that when different language is used in parallel provisions of a statute, the provisions are intended to mean different things. Appellee recognizes that subsections (i), (ii), and (iii) of Section 17(1), all of which use the language “has been,” refer to historical events, i.e., previous incidents. Appellee also recognizes that section 17(l)(vi) uses the term “was.” Appellee then posits that all ineligibility conditions *275 which use a past tense refer to prior, separate criminal behavior. Appellee, therefore, concludes that the language “was” and the language “has been” refer to previous incidents.
There is an internal conflict in appellee’s reasoning. After recognizing the rule that different language has different meaning and conceding that different language exists in the different provisions of section 17(1), appellee concludes that the different language in the different provisions has the same meaning. Appellee’s interpretation is in direct contravention of the rules of statutory construction. See Novicki v. O’Mara, supra; Hodges v. Rodriguez, supra.
The Commonwealth’s argument supporting its interpretation does not have such a conflict. The Commonwealth’s interpretation allows the different language to have different meaning and gives the entire statute a sensible meaning. The language, as interpreted by the Commonwealth, can be applied consistently throughout the statute without an absurd or unreasonable result.
Because of the use of different language in the provisions of section 17(1), we would have to add the intentionally omitted word “previously” to subsection (vi) in order for subsection (vi) to render only a person who was previously charged with violating 35 P.S. § 780-113(a)(14), (30), or (37) ineligible to receive probation without verdict. Adding this language so that subsection (vi) of section 17(1) refers to previous, separate proceedings affects the scope of the statute. Instead of barring from probation without verdict persons who have been charged with violating 35 P.S. § 780-113(a)(14), (30), or (37) in the proceeding in which the person wishes to receive probation without verdict, the excluded person would be someone who has been charged before with violating 35 P.S. § 780-113(a)(14), (30), or (37) and is being charged with violating the Drug Act a second time. Shifting the class of people who are barred from receiving verdict without probation affects the scope of the statute. Further, the language we must insert has been deliberately omitted from section 17(1)(vi). Thus, it is improper to insert the word “previously” into subsection (vi) of section 17(1). We must read section 17(1)(vi) as it is *276 written, giving the language its common and approved meaning; “Any person who was charged with violating clause (14), (30), or (37) of subsection a of [35 P.S. § 780-113]” is ineligible to receive probation without verdict. 35 P.S. § 780-117(1)(vi).
In addition, we must interpret the statute so as to give full effect to each provision. No-provision is meant as surplusage. Commonwealth v. Pierce, supra. Section 17(1)(i) already renders those persons who have been previously charged and convicted under 35 P.S. § 780-113(a)(14), (30), or (37) ineligible to receive probation without verdict. Subsection (iii) of section 17(1) excludes persons from receiving probation without verdict who have been placed on ARD after having been charged with violating the relevant offenses. Section 17(i)(iv) bars those persons who, as a result of separate incidents, have charges pending for or have pled guilty or nolo contendere to violating 35 P.S. § 780-113(a)(14), (30), or (37) from being put on probation without verdict. Section 17(1)(v) prohibits juveniles who were adjudicated delinquent for violating 35 P.S. § 780-113(a)(14), (30), or (37) from receiving probation without verdict. Thus, under appellee’s interpretation, the only person to whom section 17(l)(vi) would apply is someone who has been previously charged with violating 35 P.S. § 780-113(a)(14), (30), or (37) but has been acquitted or has had the charges dismissed, discharged or withdrawn.
Section 17(1)(vi), as interpreted by appellee, prohibits a person who was previously charged and acquitted of violating 35 P.S. § 780-113(a)(14), (30), or (37) from receiving a second .chance and yet gives the admitted drug dealer a second chance. Under appellee’s interpretation, that persons who have been charged and acquitted or have been charged and have had the charges dropped are ineligible for probation without verdict while admitted drug dealers are eligible to receive probation without verdict. This interpretation of section 17(1)(vi) is absurd and unreasonable.
The Commonwealth’s construction does not render such an unreasonable effect. Rather, construing subsection (vi) of section 17(1) to mean the charges for which defendants are presently being sentenced- after pleading guilty or nolo con *277 tendere allows each provision of section 17(1) to have a reasonable meaning and effect. The Commonwealth’s interpretation does not allow admitted drug dealers a second chance when people whose prior drug charges have been favorably disposed are not given that same second chance.
Finally, we consider the previous law, the necessity of the present statute, the mischief to be remedied and the contemporaneous legislative history. Before it was amended in 1992, section 17(1), as amended in 1972, stated:
A person who has not previously been convicted of an offense under this act or under a similar act of the United States, or any other state, is eligible for probation without verdict if he pleads nolo contendere or guilty to, or is found guilty of, any nonviolent offense under this act. The court may, without entering a judgment, and with the consent of such person, defer further proceedings and place him on probation for a specific time period not to exceed the maximum for the offense upon such reasonable terms and conditions as it may require.
Probation without verdict shall not be available to any person who is charged with violating clause (30) of subsection (a) of section 13 of this act and who is not himself a drug abuser and who does not prove the fact of such drug abuse to the satisfaction of the court.
35 P.S. § 780-117(1).
The statute originally permitted persons who were charged with violating 35 P.S. § 780-113(a)(30) and who were drug dependent to receive probation without verdict. In 1992, the statute was amended and the legislature added several exclusions to those eligible to receive probation without verdict. It is clear on the face of the present statute that the legislature meant to further limit those persons who qualified for probation without verdict by enacting the present statute. The legislature, by enacting the present statute, has made it more difficult to qualify for probation without verdict.
By limiting who is eligible to receive probation without verdict, the legislature has limited, to an extent, the discretion *278 of the trial court to impose probation without verdict. The multiple exclusions insure that a person, whom the legislature considers undeserving of probation without verdict, does not receive probation without verdict.
The legislature considers drug dealing a serious crime. See 18 Pa.C.S.A. § 7508. Any person who is convicted of violating 35 P.S. § 780-113(a)(14), (30), or (37) when the aggregate weight of the cocaine is at least two grams is subject to a mandatory minimum term of imprisonment. See 18 Pa.C.S.A. § 7508; Commonwealth v. Biddle, supra. Even if it is a person’s first offense and the person is certified drug dependent, the. convicted drug dealer is subject to the mandatory minimum sentence of imprisonment. See 18 Pa.C.S.A. § 7508; Commonwealth v. Biddle, supra.
Considering that the legislature imposes a mandatory minimum sentence of imprisonment on a person convicted for the first time of violating 35 P.S. § 780-113(a)(14), (30), or (37) when the amount of cocaine involved is at least two grams, it is illogical that the legislature would allow a person who admits to violating 35 P.S. § 780-113(a)(14), (30), or (37) where less than two grams of cocaine are involved, to be eligible for probation without verdict. Allowing a person to be eligible for probation without verdict, thereby giving the person a clean record if he successfully completes his probation term, when a similarly situated person, who only differs by having two grams or more of cocaine, is not eligible for regular probation but must serve a mandatory minimum prison term, supports the interpretation that the legislature did not intend an admitted drug dealer to be eligible for probation without verdict. Because the legislature has added restrictions to who is eligible to receive probation without verdict and the legislature imposes a mandatory minimum term of imprisonment on a defendant who pleads guilty to violating 35 P.S. § 780-113(a)(14), (30), or (37) when the amount of cocaine involved is two grams or more, we must conclude that the legislature did not intend a person who pleads guilty to violating 35 P.S. *279 § 780-113(1)(14), (30), or (37), when less than two grams are involved, to be eligible for probation without verdict.[3]
We also consider the statements made by Representative Dennis O’Brien at the time of the vote to pass the present section 17(1). Representative O’Brien first states that “[Section 17] is a valuable tool to end the clear abuse of section 17 dispositions.” Statement of Representative O’Brien, 1992 Pa. Legislative Journal — House p. 135. During his statement, Representative O’Brien lists people who would be ineligible for probation without verdict, concluding with the remark “[Section 17(1) ] also excludes serious juvenile offenders and drug offenders and drug dealers.” Statement of Representative O’Brien, 1992 Pa. Legislative Journal — House, pp. 135-36 (emphasis added).
The Commonwealth contends that the statement refers to subsection (v) and subsection (vi) of section 17(1). Appellee argues that the statement refers only to subsection (v) of section 17(1). While Representative O’Brien’s statement is not dispositive of the legislative intent, it is proper to consider his statement to aid us in our determination of the legislative intent. See Commonwealth v. Wilson, supra at 275 n. 4, 602 A.2d at 1294 n. 4.
The consequences of appellee’s averment that Representative O’Brien’s statement only referred to section 17(1)(v) is that juvenile drug dealers are denied probation without ver *280 diet. Considering appellee’s contention that Representative O’Brien’s statement refers only to section 17(1)(v) in conjunction with appellee’s interpretation of section 17(1)(vi), that an admitted drug dealer is allowed probation without verdict if it is his first offense, the result we reach is that juvenile drug dealers may not have a second chance in order to “go straight” but adult drug dealers are given that second chance. This contention is illogical. Appellee’s use of Representative O’Brien’s statement to support his interpretation makes the effect of the statute even more absurd and unreasonable.
The Commonwealth’s contention that the statement refers to both subsection (v) and (vi) is more reasonable. Drug dealers, whether juvenile or adult, may not be sentenced to probation without verdict.[4]
An argument has been made that the purpose of the statute is to give first time violators of the Drug Act, including admitted drug dealers, a second chance. Only recidivists are *281 to be denied probation without verdict. This argument would be persuasive if it were not for the fact that if subsection (vi) is not meant to exclude admitted drug dealers then it must be interpreted to exclude persons who have been acquitted of violating 35 P.S. § 780~113(a)(14), (30), or (37) or those persons who had the charges dropped. People falling within this category are, by definition, not repeat offenders. Thus, prohibiting this type of first time offender from receiving probation without verdict contradicts appellee’s proposed purpose of the statute, to give first time offenders a second chance.
After applying the rules of statutory construction to the statute, the meaning of the statute is clear. A defendant may not receive, as a sentence in the proceeding in which he pled guilty or nolo contendere to violating 35 P.S. § 780-113(a)(14), (30), or (37), probation without verdict.
Our analysis of section 17(l)(vi) does not suggest that both of the constructions proposed are reasonable. On the contrary, applying of the rules of statutory construction to section 17(1)(vi) indicates that only one reasonable construction of the statute exists that a first time offender who pleads guilty or nolo contendere to violating 35 P.S. § 780-113(a)(14), (30), or (37) cannot receive probation without verdict.
The fact that section 17 is a penal statute does not require us to accept and utilize an unreasonable interpretation. If there is only one reasonable interpretation of a penal statute, that meaning must be utilized.
Numerous cases use the rules of statutory construction to interpret penal statutes. See e.g. Commonwealth v. Runion, supra; Commonwealth v. Neckerauer; supra; Commonwealth v. Lurie, supra; Commonwealth v. Reeb, supra; Commonwealth v. Pierce, supra. If the rules of statutory construction are used to interpret a statute, there must appear to be an ambiguity. See Commonwealth v. Dickerson, supra. However, the courts, after applying the rules of statutory construction, have held that the meaning of the statute which they are interpreting is clear. See e.g. Commonwealth v. Lundberg, supra; Commonwealth v. Scott, supra. In these cases, once *282 the court has determined that the meaning of the statute is clear, it has adopted that interpretation. See id. Not all of the cases have adopted the interpretation most favorable to the defendant. See e.g. Commonwealth v. Taylor, supra (temporal restrictions are not suggested in 18 Pa.C.S.A. § 5704(2)(ii) as appellant contends); Commonwealth v. Grayson, supra (appellant’s narrow definition of touch as used in 18 Pa.C.S.A. § 3101 not accepted). Rather, the courts have adopted the reasonable interpretation. See e.g. id.
Considering the term “was charged” in the context of its usage, the meaning of “was charged” and the intent of the legislature is clear. Accordingly, only the reasonable interpretation of section 17(l)(vi) may be applied. Therefore, a defendant who pled guilty or nolo contendere to violating 35 P.S. § 780-113(a)(14), (30), or (37) cannot be sentenced to probation without verdict.
Next, we consider the argument that section 17(1)(vi) is void for vagueness that was raised sua sponte by the dissent. We recognize that we may affirm a sentencing court on any basis. See Commonwealth v. Harner, 533 Pa. 14, 617 A.2d 702 (1992). If we declare section 17(1)(vi) unconstitutional we would, in essence, be affirming the trial court’s judgment of sentence.
However, we have a well-settled legal rule that an appellate court may not raise a constitutional issue sua sponte. Commonwealth v. Barone, supra. An appellate court should not address constitutional issues unnecessarily or when they are not properly presented and preserved in the trial court for our appellate review. Id. 276 Pa.Super. at 286, 419 A.2d at 460. “The Pennsylvania Supreme Court has clearly held that constitutional issues, even sentencing issues based on the constitution, are waived if not properly raised in the trial court.” Commonwealth v. Wallace, 368 Pa.Super. 255, 261, 533 A.2d 1051, 1054 (1987) (quoting Commonwealth v. Hartz, 367 Pa.Super. 267, 273, 532 A.2d 1139, 1142 (1987) (Cirillo, P.J. concurring)). Constitutional issues, even if they go to the legality of the sentence, can be waived. Id.
*283 Instantly, appellee did not challenge the constitutionality of Section 17(l)(vi) at sentencing. Although appellee has raised other constitutional challenges, in his appellate brief, he has not claimed that Section 17(l)(vi) is unconstitutionally vague. Thus, appellee has waived the argument that subsection (vi) of Section 17(1) is void for vagueness.
Our research reveals no cases in which an appellate court affirms a trial court on a ground that a party has waived. Because appellee has waived the argument that subsection (vi) of Section 17(1) is void for vagueness and there is a strict prohibition against raising a constitutional issue sua sponte, it is not proper to address the issue that Section 17(l)(vi) is void for vagueness.
Appellee, however, raises two other constitutional issues. Appellant first alleges that subsection (vi) of section 17(1) violates due process, because whether a defendant is eligible for probation without verdict depends on what offense the district attorney charges him. Appellee posits that the district attorney can “ ‘charge’ anybody with anything. No matter how slender (or non-existent) the evidence, or unreasonable the inference, the District Attorney can ‘charge’ a person possessing drugs with dealing in drugs (i.e. ‘possession with intent to deliver’).” Appellee’s Brief at 22.
“It is unprofessional conduct for a prosecutor to institute, or cause to be instituted, or to permit the continued pendency of criminal charges when it is known that the charges are not supported by probable cause.” Commonwealth v. Hawkins, 322 Pa.Super. 199, 206 n. 7, 469 A.2d 252, 255 n. 7 (1983); ABA Standards Relating to the Administration of Criminal Justice 3-3.9(a). A prosecutor is required to refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause. Commonwealth v. Hawkins, supra.
Appellee is claiming that the district attorney routinely acts unprofessionally by charging people with crimes without probable cause. However, other than making the bald statement that the district attorney charges people even *284 though there is slim or non-existent evidence for probable cause, appellee makes no specific allegations and provides no examples of such actions. Without more, we will not hold that the district attorney routinely and purposely violates the standards of conduct for criminal justice administration.
Further, what charge to file is within the discretion of the prosecution. United States v. Batchelder, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); Commonwealth v. Spells, 417 Pa.Super. 233, 612 A.2d 458 (1992), appeal granted, 535 Pa. 633, 631 A.2d 1006 (1993). Selectivity in the enforcement of criminal law is, of course, subject to constitutional constraints; United States v. Batchelder, supra; Commonwealth v. Agnew, 411 Pa.Super. 63, 600 A.2d 1265 (1991). Selective enforcement may not be based on unjustifiable standards such as race, religion, sex or other arbitrary classification. United States v. Batchelder, supra; Commonwealth v. Agnew, supra. But, a prosecutor may be influenced by the penalties available upon conviction; however, that fact standing alone, does not give rise to a violation of the Equal Protection or Due Process Clauses. United States v. Batchelder, supra; Commonwealth v. Agnew, supra.
In United States v. Batchelder, supra, two provisions of the Omnibus Crime Control and Safe Streets Act of 1968 (Omnibus Act), 18 U.S.C. § 922(h) and § 924(a), had identical substantive elements as applied to the defendant. However, the two provisions had different maximum penalties. The prosecution decided to proceed under § 922(h) of 18 U.S.C., the provision with the greater maximum penalty. The defendant received a sentence of up to five years, the maximum possible sentence. In deciding the defendant’s challenge to the constitutionality of the prosecutor’s decision of which provision to proceed under, the United States Supreme Court held,
[A] decision to proceed under § 922(h) does not empower the Government to predetermine ultimate criminal sanctions. Rather, it merely enables the sentencing judge to impose a longer prison sentence.... More importantly, there is no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge un *285 der one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements. In the former situation, once he determines that the proof will support conviction under either statute, his decision is indistinguishable from the one he faces in the latter context. The prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause. Cf. Rosenberg v. United States, supra, 346 U.S. [273], at 294, 73 S.Ct. [1152], at 1163 [97 L.Ed. 1607 (1953) ] (Clark, J., concurring); Oyler v. Boles, supra, 368 U.S. [448], at 456, 82 S.Ct. [501], at 505 [7 L.Ed.2d 446 (1962) ]. Just as a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution neither is he entitled to choose the penalty scheme under which he will be sentenced. See U.S. Const., Art. II, §§ 2, 3; 28 U.S.C. §§ 515, 516; United States v. Nixon, supra, 418 U.S. [683], at 695, 94 S.Ct. [3090], at 3100 [41 L.Ed.2d 1039 (1974) ]
Id. at 125, 99 S.Ct. at 2205, 60 L.Ed.2d at 765-66.
Presently, appellee is not alleging that people are charged with violating 35 P.S. § 780-113(a)(14), (30) or (37) based on unjustifiable standards. Appellee is not contending he was charged with violating 35 P.S. § 780-113(a)(30) based on an unjustifiable standard. Appellee does not aver that the charge of violating 35 P.S. § 780-113(a)(30) against him was not based on probable cause. Appellee is merely complaining that because he is charged with and pled nolo contendere to violating section 780-113(a)(30) of 35 Pa.C.S.A., he will receive a stiffer penalty than he would have received had he not been charged with and pled nolo contendere to that particular drug offense. Consequently, appellee has failed to show that the district attorney has acted unconstitutionally. Thus, appellee has not shown that section 17(1), which recognizes the district attorney’s discretion in charging offenders, violates the Equal Protection or Due Process Clauses.
*286 The second constitutional challenge appellee raises is that section 17(l)(vi) violates the separation of powers doctrine. Appellee contends that the ineligibility condition of section 17(l)(vi) pre-empts a core judicial function, determining sentences of a convicted defendant.
We agree that it is the judiciary and not the district attorney who has the right to impose sentences upon conviction. Commonwealth v. Amundsen, 416 Pa.Super. 464, 611 A.2d 309 (1992). However, the legislature establishes the criminal sanctions to be imposed when a defendant violates a criminal statute of Pennsylvania. Id. Violations of different criminal statutes results in the imposition of different criminal sanctions. See generally 18 Pa.C.S.A. § 101 et seq. It is the legislature’s duty to inform the prosecutors and the courts as to the permissible punishment alternatives for a particular offense. Commonwealth v. Amundsen, supra. We reiterate that the district attorney, as part of the executive branch of government, has the primary function of enforcing the laws of this Commonwealth. Id. A prosecutor is vested with the considerable discretion of what charges should be brought against a particular offender. Id. Again, it is not impermissible for the district attorney to consider the penalties associated with a particular offense when the district attorney decides which offenses to charge a person. United States v. Batchelder, supra; Commonwealth v. Agnew, supra. After the defendant is convicted or pleads guilty or nolo contendere, the judiciary determines which punishment, outlined by the legislature, is most suitable for the particular offender.
Instantly, the legislature has set out the possible criminal sanctions for violating the Drug Act. The legislature has decided that probation without verdict is available for first time offenders who have not violated 35 P.S. § 780-113(a)(14), (30), or (37). Appellee concedes that the legislature can limit the availability of probation without verdict to those people who have not violated 35 P.S. § 780-113(a)(14), (30), or (37).
The district attorney has performed her function by charging appellee with an offense, violation of 35 P.S. § 780- *287 113(a)(30). By charging appellee with that offense, the district attorney is not imposing sentence, it is merely defining what criminal sanctions are available for the trial court to impose once a defendant pleads guilty or nolo contendere. Thus, section 17(1)(vi) which removes the possible criminal sanction of probation without verdict from the possible sanctions to be imposed by the trial court does not grant the district attorney sentencing functions. The statute limits the trial court’s possible criminal sanctions. This limitation is not violative of the separation of powers doctrine. See Commonwealth v. Amundsen, supra.
Based on the foregoing, we hold the constitutional challenges are meritless. Section 17(l)(vi) is constitutional and, hence, must be applied to the instant case.
Using the rules of statutory construction the meaning of section 17(1)(vi) is clear. There is only one reasonable interpretation of the statute. Subsection (vi) of section 17(1) prohibits a first time offender who has pleaded nolo contendere or guilty to violating 35 P.S. § 780-113(a)(14), (30), or (37) from receiving probation without verdict. Thus, the trial court imposed an illegal sentence upon appellee when it sentenced appellee to probation without verdict after he pled nolo contendere to violating 35 P.S. § 780-113(a)(30). We vacate appellee’s judgment of sentence and remand for resentencing consistent with this opinion.[5]
Sentence vacated. Remand for resentencing.
CIRILLO, J., filed a dissenting opinion.
BECK, J., joined the opinion by KELLY, J. and filed a concurring statement.
TAMILIA, J., filed an opinion in support of remand.
*288 McEWEN, J., joined the opinion in support of remand by TAMILIA, J.
CAVANAUGH, WIEAND, BECK, POPOVICH and SAYLOR, JJ., joined the opinion by KELLY, J.

. § 780-113. Prohibited acts; penalties
(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:
(14) The administration, dispensing, delivery, gift or prescription of any controlled substance by any practitioner or professional assistant under the practitioner's direction and supervision unless done (i) in good faith in the course of his professional practice; (ii) within the scope of the patient relationship; (iii) in accordance with treatment principles accepted by a responsible segment of the medical profession.
(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.
(37) The possession by any person, other than a registrant, of more than thirty doses labeled as a dispensed prescription or more than *266 three trade packages of any anabolic steroids listed in section 4(3)(vii).
35 P.S. § 780-113(a)(14), (30), and (37).

. The original statute was enacted on April 14, 1972, and was amended on October 26, 1972. See infra for text of the amended 1972 statute. The statute was again amended on April 16, 1992. See supra for text of 1992 amended statute.

. We realize that the prior statute uses the term “is charged” to refer to the proceeding in which probation without verdict is to be imposed. However, the prior statute only stated one exclusion. The current statute lists six exclusions to those who are eligible to receive probation without verdict.
In the present statute, the term “is charged” is used in section 17(l)(iv). It is obvious that subsection (iv) of section 17(1) refers to charges to which there have been no guilty or nolo contendere pleas or adjudication of guilt. Because the same language must be interpreted the same way, the legislature could no longer use “is charged” to refer to charges which have been resolved through a plea of guilt or nolo contendere. Thus, the legislature used other language to refer to the charges in the proceeding in which probation without verdict is sought. The legislature used different verb tenses in the present section 17(1) consistently. Interpreting each of the verb tenses consistently allows the statute to have a sensible meaning and effect.

. There is also a letter written by Representative O’Brien which was circulated to all the members of the House regarding the sponsorship of the amended bill known now as section 17. Again, the Commonwealth and appellee disagree. Appellee claims it is a party advertisement and that it promotes a different version of the statute than the one which was enacted by the legislature. The Commonwealth, however, claims that it was not a party advertisement but a communication regarding the necessity of an amended section 17. Further, the Commonwealth avers, the purpose behind the statute did not change, only the wording of the statute changed. Thus, the Commonwealth posits, we should consider the letter when we determine the legislative intent behind section 17. The Commonwealth concedes that the letter is not dispositive of the legislative intent.
The letter in question was sent eight months prior to the passage of section 17. The amendment of section 17 it supported did not contain the inclusion of several categories of persons not eligible to receive probation without verdict. Rather, the proposed amendment stated, probation without verdict could not be imposed by a trial court without the district attorney’s approval. In his letter, Representative O’Brien states that under the new section 17, a "drug dealer will not walk away from his crime with a clean record; as he does under present law. The drug dealer, with a conviction on his record, would have increased incentive to stop his criminal activities.”
While this letter supports the Commonwealth’s interpretation of section 17(1)(vi), the letter was written eight months prior to the enactment of section 17. Thus, the letter should not be considered a contemporaneous statement.

. At the hearing at which the nolo contendere plea was entered and sentence imposed, the trial court informed appellee that if he was not eligible for probation without verdict, then appellee would be permitted to withdraw his plea of nolo contendere. N.T. 12/24/92 at 18. Whether appellee should be permitted to withdraw his plea is not an issue which we can decide, but is a decision for the trial court.